# IN THE COURT OF APPEALS OF IOWA

No. 22-1779
Filed May 24, 2023

**IN THE INTEREST OF J.D.,**
**Minor Child,**

**K.S. and G.S.,**
        Petitioners-Appellees,

**A.E., Mother,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Nicholas Scott, District

Associate Judge.


        A mother appeals the termination of her parental rights in this private

termination action. **AFFIRMED.**


        Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant

mother.

        Anne K. Wilson and Leo T.D. Smith of Viner Law Firm, PC, Cedar Rapids,

for appellees.

        Rebecca A. Feiereisen of Trent Law Firm, PLLC, Cedar Falls, attorney and

guardian ad litem for minor child.


        Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This case centers around a child, J.D., who was born in 2013.  When he was around six months old, the Iowa Department of Human Services[1] became involved with the family, which led to a child-in-need-of-assistance (CINA) proceeding.  The CINA case eventually closed in 2015 when a bridge order was issued granting the child's father sole legal custody and physical care of the child.  *See* Iowa Code § 232.103A (2015) (permitting the juvenile court to close a CINA case "by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order").  In 2018, the father sent the child to live with his parents—the child's paternal grandparents[2]—because the father and his wife[3] could no longer care for the child or his younger half-sibling, as their house was "unlivable."  The child has been in the grandparents' care since that time.

After the father moved out of state in 2022, the grandparents brought this action under Iowa Code chapter 600A (2022) seeking to terminate the parental rights of both parents, alleging the parents abandoned the child.[4]  The father consented to termination.  The mother did not.  Following a hearing, the juvenile

---

[1] The Iowa Department of Human Services merged with the Iowa Department of Public Health in 2022 to create the Iowa Department of Health and Human Services.

[2] All future references to the grandparents refer to the paternal grandparents.

[3] The father's wife is not the mother of the child at issue in this case.

[4] Iowa Code section 600A.5(1)(b) authorizes a custodian of a child to file a petition for termination of parental rights.  Section 600A.2(8) defines "custodian" to include "a relative within the fourth degree of consanguinity to a minor child who has assumed responsibility for that child."  In their petition, the grandparents alleged they are the child's custodians.  No one has challenged the grandparents' allegation of being the child's custodians or their authority to bring this proceeding, so we proceed with the understanding that the grandparents have such authority.

court terminated the rights of both parents. Only the mother appeals. She argues the grandparents failed to prove she abandoned the child.

"Private termination proceedings under chapter 600A are reviewed de novo. Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020) (internal quotation marks and citations omitted). Chapter 600A termination cases follow a two-step process. *Id.* First, the party seeking termination must show, by clear and convincing evidence, that one of the statutory grounds for termination provided in section 600A.8 is satisfied. *Id.* Then, the court must determine whether termination is in the child's best interests. *Id.* Here, the mother only challenges the statutory grounds, so we limit our analysis to the first step. *See In re B.J.*, No. 22-0281, 2022 WL 3906767, at *1 (Iowa Ct. App. Aug. 31, 2022).

The juvenile court terminated the mother's rights under Iowa Code section 600A.8(3)(b). That section permits termination of a parent's rights to a child who is six months of age or older at the time of the termination hearing when abandonment is found as follows:

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).

The evidence is uncontested that the mother has failed to provide any financial support for the child since the closing of the CINA case in 2015. The mother attempts to excuse this failure by claiming she previously offered financial support to the father and he refused, so she didn't offer again. We find this excuse insufficient. The mother testified she has some income. Section 600A.8(3)(b)'s directive that she contribute support for the child in a reasonable amount according to her means required her to provide something. Her failure to do so establishes abandonment within the meaning of section 600A.8(3)(b).

We could end our analysis with our finding that the mother failed to contribute support within her means, as "[a] parent is deemed to have abandoned their child unless they *both* make reasonable financial contributions *and* maintain monthly contact, so the [party seeking termination] only needs to prove the [mother] failed at one of the two prongs to show [s]he abandoned" the child. *In re J.B.*, No. 21-1420, 2022 WL 951053, at *6 (Iowa Ct. App. Mar. 30, 2022) (emphasis added). Nevertheless, we elect to also address the mother's claim that her lack of contact only occurred because the father prohibited such contact and she was unaware the grandparents had assumed physical care of the child.

We begin by noting that the mother admits that she has not seen the child since 2017. The mother attempts to excuse this lack of contact by claiming the father blocked her contact. The only evidence supporting the mother's contention

was her own testimony; testimony from her own grandmother and friend (who got their information from the mother); and one text exchange from February 2022 between the father and mother, wherein the father told the mother he previously limited contact because she could not "get [her]self straight."[5]  But the mother's testimony lacked specifics on when and how often the claimed blocking occurred. We find the mother's vague testimony coupled with one brief text message exchange insufficient to establish that the mother's five-year absence from her nine-year-old son's life was caused by the father's actions as opposed to the mother's lack of interest.  As to her claim that she did not have contact with the child because the child went to live with the grandparents without her knowledge, nothing suggests the father or grandparents tried to keep the child's move to the grandparents' home a secret.  If anything, the mother's lack of knowledge of this move reinforces how detached the mother was from the child's life.  And, as the juvenile court pointed out, even after this case started and the mother clearly knew the child was in the grandparents' care, the mother never sought contact with the child.

The mother's final complaint is that she did not intend to abandon the child, pointing to her and her witnesses' testimony that she would not do that.  But this complaint is based on a misperception of abandonment in the context of section 600A.8(3)(b).  To some, abandoning a child means essentially giving the child away, turning one's back on the child, and never thinking about or caring

---

[5] The mother testified she had proof that the father prohibited contact between mother and child on Facebook accounts.  She did not provide that proof at the hearing.  She claimed she no longer had access to those accounts to provide that proof, but she admitted she made no effort to gain such access.

about the child again. But such total physical and emotional desertion is not required in order for statutory abandonment to occur. To the contrary, the statute makes clear that a parent meets the definition of abandonment when the parent does not meet the financial and contact obligations set forth in the statute, regardless of the parent's subjective intent. *See* Iowa Code § 600A.8(3)(c) ("The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child."). That is precisely what happened here. The mother disengaged from the child's life for over five years, and she did not provide any financial support for him. She lost touch with him for so long that she did not realize the grandparents had been caring for him for around four and one-half years. This lack of contact and inaction amounts to statutory abandonment, regardless of any expressed or unexpressed intent of the mother not to abandon the child.

We find clear and convincing evidence that the mother abandoned the child within the meaning of Iowa Code section 600A.8(3)(b).[6] Accordingly, we affirm the juvenile court.

**AFFIRMED.**

---

[6] The mother complains that the guardian ad litem had an associate do much of the leg work in this case and never met with the mother. She asks us to give the guardian ad litem's report and recommendation little weight. We would reach the same outcome absent any consideration of the guardian ad litem's report or recommendation.